Good morning, Your Honors. Marie Kyle on behalf of the petitioner. We cannot continue to adopt a results-oriented view of immigration law in which the BIA I give my usual speech about this time. That microphone doesn't work all that well, so keep your voice up. Probably closer to you. Yes, that's fine. I apologize, Your Honors. We cannot continue to adopt a results-oriented view of immigration law in which the Board of Immigration Appeals searches for a justification to deport. Judge Rosenberg's dissent in matter of IALA articulates an inherent problem in Board precedent. IALA's admission was IALA was found to have been admitted as a lawful permanent resident, whereas in matter of Kolamatangi there was no admission because the status conferred on that individual was conferred by fraud due to a bigamist marriage. The constant factor in both of these cases is the fact that the alien was ultimately denied relief by the Board of Immigration Appeals. A 212-H waiver and an adjustment of status for IALA and a cancellation of removal. Counsel, what bothers me about your position in this case, and I'm just speaking for myself and telling you, you know, what's on my mind. In this case, the petitioner is challenging his own LPR status as having been illegally obtained, and yet that was something that your client sought initially, was LPR status. Why isn't there some sort of estoppel that applies here where someone says, hey, I really want to be an LPR, and then says, oh, never mind, I guess I got it wrongfully and now I can undo it? That just strikes me as somehow inappropriate. Would you comment on that? Your Honor, that situation actually comes up quite frequently in immigration law. Individuals want to be deemed, inspected and admitted so that they may adjust their status, even though they've entered on someone else's visa. So although they've obtained that inspection of admission by fraud, they're willing to go back and say, you know what, I did make that mistake. Well, I understand that it happens a lot. I'm asking why it should be allowed to happen, because the person is really, in a sense, gaming the system, it seems to me. Your Honor, I don't see it as a gaming of the system. I see that it is a correct application of the system. The INA clearly contemplates that there are benefits to be gained by an admission, whether those benefits ultimately fall to the alien or ultimately fall to the government seeking to deport. But, you know, it leads this weird juxtaposition, if I hear your claim correctly, and that would be Congress would basically give a pass to noncitizens who had fraudulently obtained LPR status, and then noncitizens who had legitimately obtained it might be barred from 212H relief. And apart from the reading of the statute, which we'll get to, that just doesn't make sense. Could you – maybe it makes sense to you and you can explain it to me. Your Honor, I do see the Court's point on that. However, the issue becomes whether we have a lawful admission or not. And I think we get into dangerous territory when we say that we're going to uphold the law when it gets the result that we want versus upholding the law when it gets a result that we don't see as advantageous or desirous. I think that we do have the issue of a lawful or an unlawful admission. And that itself needs to be examined, not the ultimate end result of what happens with an individual question. Kagan in the statute, you know, there's the – an alien who's been – who previously have been admitted, and then the second part, the lawfully admitted for LPR. How do you distinguish between those two in your interpretation? Your Honor, I believe in that statute the emphasis is on this manner in which the alien was admitted, which is an alien lawfully admitted for permanent residence. That brings it well in line with Monet v. INS and the issue of the 212C waiver, whether an alien was lawfully admitted for permanent residence. I believe in both readings, whether it's 212C or the 212H, we have the emphasis on the lawfully admitted for permanent residence. And the inquiry becomes as to whether or not that individual was lawfully admitted. In the instant matter, we are very squarely on point with Monet v. INS. We have an individual who concealed a conviction upon entry. This Court did find in Monet v. INS that that alien was never lawfully admitted for permanent residence. Petitioner in the instant case is in the exact same position. A conviction was concealed. That concealment led to his admission for lawful permanent residence. Now, he is indeed eligible to apply for a 212H waiver as he was not ever lawfully admitted due to the fact he concealed his conviction. Simply because this results in a benefit to the alien, we cannot ignore the Court's interpretation of the words lawfully admitted for permanent residence. We cannot be in a position where we're trying to look at an ends-result interpretation of the law. We need to look at the statute itself. And as I said before, we have to allow for the result that that eventually entails, whether it's something that we feel good about or not. It is the result based on that interpretation of the words. I'll reserve the remainder of my time. Certainly. You may do that. We'll hear from the Attorney General. May it please the Court. I am Blair O'Connor on behalf of the Attorney General. Your Honors, the Court in this case is being asked to find that an alien who was previously admitted as a lawful permanent resident and who subsequently was convicted of an aggravated felony offense is nonetheless eligible for relief in the form of a waiver of inadmissibility under Section 212H on account of his having allegedly procured his admission by fraud. Such an interpretation of the statutory language at issue is simply not reasonable because both the Board and those circuits that have addressed this issue, including this Court in an unpublished decision, have disagreed with the Petitioner's interpretation of the statute. This Court should deny this petition for review. And as this Court noted in saying the unpublished decision, the issue with respect to Section 212H eligibility is not whether an alien was lawfully admitted, but rather is whether the alien was granted the status of lawful permanent residence. And it's clear here that in August of 1990, Mr. Summ was granted admission as a lawful permanent resident. We think it's instructive the cases that have rejected equal protection challenges to the availability of Section 212H to non-LPRs but not to LPRs. The reason the courts rejected that challenge is that they found that Congress had a rational basis for not granting that relief to LPRs because they enjoy special status and special privileges, and therefore, they can be held to a higher burden, a higher ground for the eligibility for relief. That's instructive because here Mr. Summ was admitted as an LPR in 1990. He enjoyed that status for 12 years in this country. Congress, from the language they used in the statute, it is suggestive that Congress did not intend for any LPR, whether or not it was that that status was gained lawfully or unlawfully, should be eligible for the Section 212H waiver. Petitioners rely on cases that are an opposite because they deal with different statutes. They rely on this Court's decision in Monet, which dealt with former Section 212C, and the Board's decision in Kamataga, I may have mispronounced that, which dealt with cancellation of removal. The reason those are distinguishable, because the key phrase in both of those statutes were aliens who are lawfully admitted. And as the First Circuit, the Fourth Circuit, the Eleventh Circuit, and as I said, this Circuit in unpublished decision have found in Section 212H, the key language, the operative phrase, so to speak, is a prior admission as a lawful permanent resident, whether or not that admission was obtained lawfully or not. Here, again, Mr. Summ was admitted as an LPR in 1990. He enjoyed that status for 12 years, and he should not now, and again, this is speculative in his allegation that it was even procured unlawfully. The record shows that he had an arrest for what is criminal coercion, but the record clearly shows that there was never a conviction as a result of that arrest. And there's no indication in this record by either an affidavit or testimony that he ever admitted that he committed that offense. Ginsburg. Could I just ask you on the terminology here? The word admission is defined in the Act. Yes, Your Honor. Basically to mean the lawful entry after inspection and authorization. I think that's a paraphrase. How does that word, admission or admit, get distinguished from lawfully admitted for permanent resident? The circuits that have addressed this, including the Board and ALIA, they found that although lawfully admitted for permanent residence, that's a term of art and it is defined in Section 101A20. But that appears, in the words of the, I think, the Fifth Circuit, that appears that phrase is separate and distinct from the phrase that precedes that, and that is previously admitted as an LPR. That previous admission has no condition on it being lawful or not. It's just that it's being admitted in that status. So an ALIA. Is that procedural? I mean, Ayala talks about procedural. I think it makes a reference to admission being procedural. What kind of admission is one where you get admitted via inspection at the border? I mean, again, I think it is in terms of that. That initial phrase is in terms of, like, procedural, Your Honor, because, again, he presented his visa, which he had obtained. It was approved. And so, therefore, he was stamped in as an immigrant, as a lawful permanent resident. Procedurally, that was fine, because there was no indication on there that there may have been grounds for him not being admissible as an LPR. The problem with the cases that the Petitioners are relying on, which is, again, Section 212C and cancellation, is that there it's conditioned on the admission being lawful. Lawfully admitted is, quote, unquote, the key words. And, therefore, an alien can't get cancellation as an LPR if they obtained that status unlawfully. But here we're focused on a statute that is phrased in terms of an alien previously being admitted as a lawful permanent resident. And as the Board said in Elia, there's no either expressly or by implication, is that language conditioned on the admission being lawful or not. And so if procedurally it was fine, and, again, that references Judge McKeon 101A13, if the entry appears to have been procedurally correct, then that is a lawful entry for purposes of him, again, getting the visa stamped and coming in as an LPR. And so, you know, he shouldn't be able to, 12 years later, try to come up and speculate, oh, well, maybe that wasn't a lawful admission. Therefore, I am eligible, even though I've lived for the last 12 years as an LPR, try to give me a Section 212H waiver. I mean, those circuits that have looked at this statute have said, no, that's not a reasonable interpretation. And we would urge this Court to find the same in the present case. And the only other point is one I alluded to earlier. Again, we do think it's important, this Court's reasoning in Taguchi v. Schultz, where, again, it upheld the equal protection challenge to the 212H waiver only applying to non-LPRs, the reasoning behind that is instructive fear. Again, people who are admitted in that status enjoy special privileges, and therefore, Congress had a rational basis for limiting this waiver only to non-LPRs. And that's instructive fear, because he was admitted as an LPR, and he enjoyed that status for 12 years. He never made any bones about it, never tried to say, hey, maybe I wasn't admitted. It wasn't until he was put in removal proceedings and he's faced the possibility of being removed, and he wants adjustment of status, that for the first time he brings up this 1987 arrest and says, well, I failed to do the – you know, even though I checked the box in my visa application that I had been previously arrested, I didn't really go into details about this, so therefore, I find that my admission was not lawful. That reasoning there is instructive in this case. And barring any further questions, you would ask that this Court defer to those other You have some rebuttal time remaining. Your Honor, once again, the government has gone back to that results-oriented view that I spoke about earlier. He discusses the fact that the Petitioner was able to enjoy his lawful permanent residence status for a great deal of time, and therefore, should not be able to enjoy  And I think that's a very important point. from going back and disclosing his prior bad acts. The Petitioner consistently maintains that the issue at hand here is the nature of his admission, not the ultimate results, whether he either gained or whether he either lost from that admission and the nature of it. However, if we are going to look at reasonable interpretation, if we are going to look at a results-oriented view, I believe the Petitioner prevails on those grounds as well. In a hypothetical scenario on these facts, if the Petitioner had chosen to try to apply for cancellation of removal for legal permanent residence, had he been eligible by the nature of his conviction, the government would have been the first one to jump up and down and say, wait, wait, you concealed information on your application. You should therefore be ineligible. Your admission as a lawful permanent resident was fraudulent. The government would have been the first one to raise that point had that been the factual scenario at hand. It's very important in the instant case that we allow, that we correctly interpret and then allow whatever results to flow from it as they may. If there are no further questions, then the matter stands submitted. Thank you, counsel. We appreciate the arguments of both attorneys. And the case is submitted.
judges: Wallace, Graber, McKeown